IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANKIE GERALD BURTON,

               Petitioner,

    v.

STEVEN R. GLUNT, et al.,

               Respondents.

CIVIL ACTION
NO. 07-1359

## OPINION

**Slomsky, J.**                                                    **December 11, 2013**

## I.    INTRODUCTION

Before the Court are Objections to the Report and Recommendation of United States Magistrate Judge Thomas J. Rueter recommending the denial of the revised Petition for a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 by Frankie Gerald Burton ("Petitioner"). (Doc. No. 47.)  Petitioner seeks relief based on a variety of alleged constitutional violations.

Following a review of the filings by the parties and the pertinent record, the Magistrate Judge issued a Report, recommending that the Petition for a Writ of Habeas Corpus be denied and that a certificate of appealability not be issued.  (Doc. No. 44.)  As noted, Petitioner has filed Objections to the Report and Recommendation.  (Doc. No. 47.)  For reasons that follow, the Court will adopt the Magistrate Judge's Report and Recommendation and deny the revised Petition for a Writ of Habeas Corpus.[1]

---

[1] For purposes of this Opinion, the Court has considered the following:  the revised Petition for a Writ of Habeas Corpus (Doc. No. 15), Memorandum of Law in Support of the Petition with accompanying exhibits (Doc. Nos. 25-26), Respondents' Response in Opposition (Doc. No. 38), Petitioner's Reply to the Response (Doc. No. 43), the Magistrate Judge's Report and Recommendation (Doc. No. 44), Petitioner's Objections to the Report and Recommendation (Doc. No. 47), and the relevant state court record.

## II.     BACKGROUND

On July 16, 1999, after a seven-day jury trial, Petitioner was convicted of multiple offenses including robbery, indecent assault, aggravated assault, simple assault, theft of movable property, receipt of stolen property, criminal trespass, criminal solicitation, terroristic threats, burglary, attempted theft of a motor vehicle, and attempted kidnapping.  Com. v. Burton, Nos. 6091-1998, 6875-1998, slip op. at 1 (C.P. Mtgy. Feb. 14, 2011).  These charges stemmed from "a series of offenses relating to a violent and terrorizing crime spree he engaged in on the night of August 30, 1998."  Id.  The trial court set forth the facts of that crime spree as follows:

> On August 30, 1998, . . . a man on a bicycle approached [K.V.], then aged thirteen, and asked her whether she liked a musical group named "Bones, Thugs and Harmony." He then asked if she "wanted to get it on," blocked her path with his bicycle and grabbed her buttocks. [K.V.] . . . identified that man as [appellant]. The time was approximately 6:47 p.m.
>
> At 7:40, police learned of a woman [Diane Foreman] approximately one mile away in Horsham Township who reported a man matching [appellant's] description, and riding a bicycle, approached her as she walked on the street, talked to her and finally grabbed her buttocks. Although this victim was approximately 30 years old, . . . her appearance resembled that of a teenage girl. . . . [S]he wore shorts, a t-shirt, sneakers and a ponytail, and . . . [appellant] "kept asking [her] how old [she] was." She would also testify that [appellant] was wearing a portable CD player on his waistband.
>
> At approximately 8:20 p.m., in Hatboro, Morris Shatzkin, 76, was assaulted by a man he identified as [appellant], who attempted to steal his automobile in the parking lot of a fast-food restaurant. [Mr. Shatzkin testified] that [appellant] "reeked of alcohol," that [appellant] demanded his wallet, and that [appellant] told him he ( [appellant] ) was in trouble and wanted Shatzkin to "take him somewhere." The location of this attempted robbery was approximately one mile from the previous incident. Between 9:00 p.m. and 9:20 p.m., a man identified as [appellant], and riding a blue Huffy mountain bike, approached [R.E.] and [C.A.], aged 15 and 17, respectively, . . . and attempted to rob them of money. This incident occurred less than one-quarter mile from the attempted carjacking.
>
> At approximately 10:00 p.m., police received a report of an attempted burglary of the McPeak residence, only fifty yards from the attempted robbery of [R.E.] and [C.A.]. At approximately 10:15 p.m., police received a report of a burglary from the Frieman residence, which abuts the back yard of the McPeak residence. For both the McPeak and Frieman residences, children's toys were in the yards, and

2

were visible from the street. . . . [O]ne of the residents of the burgled homes had seen [appellant] riding his bicycle through the neighborhood, looking down the driveways, into the yards.

Finally, at 10:54 p.m., police received a report that a man matching [appellant's] description had broken into the Staples residence, less than one-quarter mile away, and had attempted to abduct a girl before fleeing. The girl, [L.S.], was eight years old at the time. She said that when she escaped from [appellant], she saw her dog leap at [appellant] with his fangs bared, as if preparing to bite him on the wrist. The police later investigated the crime scene at the Staples residence and found a black glove that came from the Frieman residence. As with the McPeak and Frieman residences, children's toys in the back yard were visible from the street.

As soon as they received the last report, police went to a park approximately 50 to 100 yards from the Staples residence. There they found a blue Huffy mountain bike near the park entrance. Next to the bicycle was a woman's purse, which contained identification belonging to Lisa Frieman. Protruding from the purse was a portable CD player. The officers then saw and apprehended [appellant]. He exuded an odor of alcoholic beverage. A search of his pockets revealed a set of automobile keys belonging to the Staples family. He also carried a CD by the musical group "Bones, Thugs and Harmony." He was bleeding from what appeared to be puncture wounds on his wrists. He told the officers the bicycle was his, and that he had stolen the purse by breaking through a screen and entering a home. He also stated that he had cut his arm by punching through a glass pane to burglarize another house, and had knocked a girl down a flight of steps during this burglary.

Com. v. Burton, 770 A.2d 771, 775-76 (Pa. Super. Ct. 2001) (quoting Trial Court Opinion, 6/19/00, at 16-18 (alterations in original) (citations omitted)) (footnote omitted).

Following his conviction, Petitioner was sentenced to an aggregate term of incarceration of forty-two to one-hundred-eighteen years. Burton, Nos. 6091-1998, 6875-1998, slip op at 1 (C.P. Mtgy. Feb. 14, 2011). On appeal, the Superior Court of Pennsylvania affirmed the judgment of sentence, and the Supreme Court of Pennsylvania denied Petitioner's request for review on February 10, 2005. Id. at 1-2.

On January 12, 2006, petitioner filed a pro se petition pursuant to Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. Ann. § 9541, et seq. Id. at 2. Petitioner later

3

obtained counsel who filed an amended PCRA petition on June 25, 2010.  Id.  A hearing was

conducted over the course of three days: August 19, October 25 and November 24, 2010.  Id.  On

November 11, 2010, prior to the conclusion of the PCRA hearing, Petitioner filed a motion to

proceed pro se and terminate the representation by his PCRA counsel.[2]  (Doc. No. 25 at 39.)  On

December 30, 2010, the PCRA court denied the amended PCRA petition.  Com. v. Burton, Nos.

6091-1998, 6875-1998, slip op. at 4 (C.P. Mtgy. Dec. 30, 2010).  Petitioner appealed on January

11, 2011, and the Superior Court affirmed the decision of the PCRA court.  Com. v. Burton, No.

255 EDA 2011, slip op. at 10-11 (Pa. Super. Ct. Feb. 8, 2012).  The Supreme Court of

Pennsylvania subsequently denied Petitioner's request for allowance of an appeal on June 27,

2012.

During the PCRA process, Petitioner brought the instant habeas litigation by filing a

Petition Seeking Abeyance of Stay in the Above Matter on Appeal in the Lower Court on April 3,

2007.  (Doc. No. 1.)  The Court granted the Motion and stayed Petitioner's habeas case pending

exhaustion of his state court remedies.  (Doc. No. 2.)  After the Supreme Court of Pennsylvania

denied Petitioner's request for allowance of an appeal from the PCRA court's decision, Petitioner

filed a revised pro se Petition for a Writ of Habeas Corpus on August 20, 2012.  (Doc. No. 15.)

The Petition contained seventeen claims for relief, some with subparts.  (See id. at ¶ 12.)  On

September 12, 2012, this Court referred the case to Judge Rueter for a Report and

Recommendation.  (Doc. No. 18.)  Judge Rueter issued his Report and Recommendation on

---

[2] On February 22, 2011, PCRA counsel filed a motion to withdraw as counsel in the case, and a
waiver of counsel hearing was held on May 11, 2011.  (Doc. No. 25 at 40.)  At that hearing,
"[P]etitioner voluntary [sic] and intelligently waived his right to representation, and his desire to
proceed pro se on appeal."  (Id.)  The court granted PCRA counsel's motion to withdraw, and
Petitioner was no longer represented by counsel.

April 23, 2013 (Doc. No. 44), and Petitioner filed Objections to the Report on June 26, 2013

(Doc. No. 47). Those Objections are now before the Court.

### III.   STANDARD OF REVIEW

**A.  28 U.S.C. § 2254 Review**

Pursuant to 28 U.S.C. § 2254(d), federal habeas relief is precluded on:

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a deferential standard of review. When the state court has not

adjudicated a petitioner's claims on the merits, however, the federal court conducts de novo

review. Palmer v. Hendricks, 592 F.3d 386, 392 (3d Cir. 2010); see also Coombs v. Diguglielmo,

616 F.3d 255, 261 (3d Cir. 2010) (reviewing petitioner's Batson v. Kentucky claim de novo since

state courts did not review it on the merits). Regardless of whether a petitioner's claims were

adjudicated on the merits, factual determinations made by a state court are presumed correct

unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); see also Palmer, 592

F.3d at 392 (quoting Simmons v. Beard, 581 F.3d 158, 165 (3d Cir. 2009)).

**B.  De Novo Review of Objections to Report and Recommendation**

Pursuant to 28 U.S.C. § 636(b)(1)(B) and the local rules of this Court, a district judge

may designate a magistrate judge to file proposed findings and recommendations. Any party

may file written objections in response to those findings. Id. § 636(b)(1)(C). In the Eastern

District of Pennsylvania, Local Rule 72.1.IV(b) governs Petitioner's objections to the Magistrate

Judge's Report and Recommendation. Under this Rule, Petitioner must "specifically identify the

portions of the proposed findings, recommendations or report to which objection is made and the

basis for such objections . . . ."  Savior v. Superintendent of Huntingdon SCI, No. 11-5639, 2012 WL 4206566, at *1 (E.D. Pa. Sept. 20, 2012) (quoting Local R. Civ. P. 72.1.IV(b)).  With respect to pro se litigants, however, this rule may be relaxed.  See McCabe v. Pennsylvania, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006) (treating pro se litigant's letter to court as objection triggering de novo review, "[a]lthough Petitioner did not file formal objections to the Report and Recommendation").

Once objections are filed, the district judge "shall [then] make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  [The judge] may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1)(C).  The Third Circuit has "assumed that the normal practice of the district judge is to give some reasoned consideration to the magistrate's report before adopting it as the decision of the court."  Henderson v. Carlson, 812 F.2d 874, 878 (3d Cir. 1987); see also Bolt v. Strada, No.12-1599, 2013 WL 4500466, at *1 (M.D. Pa. Aug. 21, 2013).

## IV.   ANALYSIS

In his revised Petition for a Writ of Habeas Corpus, Petitioner raised seventeen claims for relief, some with subparts.  The Magistrate Judge reviewed all seventeen claims, and this Court will now review Petitioner's objections to the Report and Recommendation.  Because the Magistrate Judge found many of the claims procedurally defaulted, the Court will briefly discuss the standard for determining when a claim is procedurally defaulted.

Under federal habeas corpus standards, the concepts of procedural default and exhaustion go hand-in-hand.  It is firmly established that a petitioner must present all of his claims to a state's intermediate court, as well as to its supreme court, before a federal district court may entertain a petition for a writ of habeas corpus.  See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v.

Boerckel, 526 U.S. 838, 845 (1999); Rolan v. Coleman, 680 F.3d 311, 317 (3d Cir. 2012) cert.

denied, 133 S. Ct. 669 (2012); Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000) (citations

omitted).  To satisfy this exhaustion requirement, a petitioner must show that the claim raised in

the federal habeas petition was "fairly presented" to the state courts.  Duncan v. Henry, 513 U.S.

364, 365-66 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  To demonstrate that a

claim has been fairly presented to the state courts, a petitioner must show that the claim is "the

substantial equivalent of that presented to the state courts.  Both the legal theory and the facts

supporting a federal claim must have been submitted to the state courts."  Lesko v. Owens, 881

F.2d 44, 50 (3d Cir. 1989) (citations omitted).

　　　　When a petitioner cannot obtain state court review of his claims because of

noncompliance with state procedural rules,[3] the doctrine of procedural default generally operates

to bar federal habeas review.  See Coleman v. Thompson, 501 U.S. 722, 729-32 (1991).

According to the Third Circuit, "[p]rocedural default occurs when a claim has not been fairly

presented to the state courts (i.e., is unexhausted) and there are no additional state remedies

available to pursue . . . ."  Rolan, 680 F.3d at 317 (citations omitted).[4]  Upon a finding of

procedural default, "federal habeas review of the claims is barred unless the [petitioner] can

demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental

miscarriage of justice."  Coleman, 501 U.S. at 750.

---

[3] The relevant state procedural rule here is 42 Pa. Cons. Stat. Ann. § 9545(b)(1), which mandates that "[a]ny [PCRA] petition . . . shall be filed within one year of the date the judgment becomes final[,]" unless an exception applies.

[4] Procedural default may also occur "when an issue is properly asserted in the state system but not addressed on the merits because of an independent and adequate state procedural rule . . . ." Rolan, 680 F.3d at 317 (citations omitted)

Thus, procedural default will be excused if a petitioner can show cause, or a reason, for the default and prejudice resulting from the alleged federal violation. "Cause" for default "ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim." Murray v. Carrier, 477 U.S. 478, 492 (1986). For example, cause is shown when "the factual or legal basis for a claim was not reasonably available to counsel, or . . . 'some interference by officials,' made compliance impracticable . . . ." Id. at 488 (internal citations omitted). On the other hand, "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default." Id. at 486.

To demonstrate prejudice, Petitioner must show:

> "[N]ot merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Such a showing of pervasive actual prejudice can hardly be thought to constitute anything other than a showing that the prisoner was denied "fundamental fairness" at trial.

Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)). If both cause and prejudice are successfully shown, procedural default will be excused, and the Court may review the merits of the claim. Procedural default of a claim may also be excused if the petitioner successfully demonstrates that failure to consider the claim will result in a fundamental miscarriage of justice.

### A. Petitioner's Objection Regarding Claim One is Unavailing, As a Citation to a Single Federal Case Does Not Make a Claim of Alleged Violations of State Law Cognizable on Federal Habeas Review

Petitioner first objects to the Magistrate Judge's finding that Petitioner's claim—that the trial court erred in granting the State's motion to consolidate the charges and denying Petitioner's motion to sever the charges—is not cognizable on federal habeas review. (Doc. No. 47 at 1.)

8

The Magistrate Judge found that Petitioner did not assert a federal constitutional violation in his first claim, and therefore, the claim is not cognizable here because habeas relief cannot be granted for alleged violations of state law.  (Doc. No. 44 at 15-16.)  Petitioner objects to the Magistrate Judge's finding and contends that his citation to Haley v. Blue Ridge Transfer Co., Inc., 802 F.2d 1532 (4th Cir. 1986) renders this claim cognizable.  (Doc. No. 47 at 1.)  Petitioner's objection is unavailing.

First, Petitioner did not rely on the Haley case in making his arguments.  Instead, the case is simply cited by the Supreme Court of Pennsylvania in Carter by Carter v. U.S. Steel Corp., 529 Pa. 409 (1992), on which Petitioner relies.  (Doc. No. 25 at 18.)  Second, even if Petitioner relied on Haley in his first claim, simply citing a single federal case does not establish that Petitioner's claim based on a federal constitutional violation.  For these reasons, the Court agrees with the Magistrate Judge's finding that Petitioner's first claim alleges violations of state law and is therefore not cognizable on federal habeas review.

### B.  Petitioner's Objections Regarding Claim Two are Not Persuasive, As He Failed to Demonstrate that the Procedural Default of this Claim Should be Excused

For multiple reasons, Petitioner objects to the Magistrate Judge's finding that his second claim is procedurally defaulted.  In his second claim, Petitioner alleged that the trial court erred in allowing various witnesses to identify him in court after they failed to identify him in a pretrial photo array.  (Doc. No. 25 at 19-25.)  The Magistrate Judge was not persuaded by Petitioner's arguments, and Petitioner now lodges various objections.  First, Petitioner objects to the Magistrate Judge's finding that Petitioner's claim regarding witness Morris Shatzkin is procedurally defaulted. (Doc. No. 47 at 1-2.)  Second, Petitioner objects to the Report for finding that his claim regarding witness Angela Johnson is also procedurally defaulted.  (Id. at 2.)  Third, Petitioner disagrees with the Magistrate Judge's finding that Petitioner did not sufficiently allege

9

cause and prejudice to excuse the procedural default of his claim regarding witnesses Laura

Staples and Dave Frieman.  (Id.)  The Court will address each objection seriatim.[5]

First, Petitioner objects to the finding that his second claim relating to witness Morris

Shatzkin is procedurally defaulted.  On direct appeal, the Superior Court of Pennsylvania

explained that "[b]ecause [Petitioner] raised the issue of whether the court erred in allowing

those witnesses that were unable to identify [Petitioner] in the photo array to identify him during

court proceedings, he preserved this issue as to Mr. Shatzkin only if Mr. Shatzkin was unable to

identify him in the photo array."  Burton, 770 A.2d at 780 (emphasis added).  The Superior Court

reviewed the record and found that because Morris Shatzkin "was positive about his photo

identification[,]" this claim had been waived as it related to this specific witness.  Id.  Due to this

waiver, the Magistrate Judge concluded that the claim is procedurally defaulted.  (Doc. No. 44 at

18.)  Despite Petitioner's contention that Morris Shatzkin was not sure about his photo

identification of Petitioner, a review of the record reveals otherwise.  Morris Shatzkin's relevant

testimony is as follows:

> Q. [Trial Counsel]   And when you went and viewed the photographs, you weren't a hundred percent sure at that time, correct?
>
> A. [Morris Shatzkin]  I was pretty sure when I saw the photographs.
>
> Q. Were you a hundred percent sure?
>
> A.  Yes, I was, or I would not have identified him.

(N.T., June 17, 1999, 108:8-12.)  Petitioner has failed to present clear and convincing evidence to

rebut the state court's factual determination that Morris Shatzkin was sure about his photo

---

[5] Petitioner makes no specific objection to the Report regarding witnesses Kathleen Veillet and Jackie Werner.  Instead, he simply states that he clearly set forth facts of record that establish that these witnesses' in-court identifications of Petitioner were unreliable.  (Doc. No. 47 at 2.)  Because Petitioner did not make a specific objection to the Report's finding regarding these two witnesses, the Court will not review the claim further.

identification of Petitioner.  Thus, because the state court found this claim waived, the Magistrate Judge was correct in finding it procedurally defaulted.

Second, Petitioner objects to the Magistrate Judge's finding that his second claim relating to witness Angela Johnson is also procedurally defaulted.  (Doc. No. 47 at 2.)  The Magistrate Judge found this claim defaulted because it had not been raised before the state courts.  (Doc. No. 44 at 18.)  Petitioner objects and contends that he raised this claim on direct appeal.  (Doc. No. 47 at 2.)  Petitioner did not raise a claim about the trial court's error in allowing Angela Johnson to identify him in court.  Instead, Petitioner argued on direct appeal that trial counsel was ineffective for failing to call her as a witness for the defense.  Burton, 770 A.2d at 788.  The claim about trial court error was not raised, and therefore, the Magistrate Judge was correct in finding that this claim is procedurally defaulted and unreviewable here.

Third, Petitioner objects to the Report's finding that he did not sufficiently allege cause and prejudice to excuse the procedural default of his claim regarding witnesses Laura Staples and Dave Frieman.  (Doc. No. 47 at 2.)  Petitioner contends that the asserted grounds for excusing the procedural default of his fourth claim, infra, also operate to excuse the default of this second claim as it relates to these two witnesses.  (Id.)  In his fourth claim, Petitioner alleged that trial counsel was ineffective for failing to request live lineups prior to trial for Laura Staples and Dave Frieman.  (Doc. No. 25 at 25-27.)  This argument differs from his second claim, in which he contends that the trial court erred by allowing these two witnesses to identify him in court.  (Id. at 19-25.)  Furthermore, Petitioner's discussion of his fourth claim is devoid of any discussion of cause and prejudice or a fundamental miscarriage of justice to excuse procedural default.  (See id. at 25-27.)  Because this second claim regarding witnesses Laura Staples and Dave Frieman was not raised before the state courts, the Magistrate Judge was correct in finding this claim

procedurally defaulted and unreviewable here.  Petitioner failed to allege grounds to excuse the procedural default of this claim.

> **C.  Petitioner's Objection Regarding Claim Three is Without Merit Because He Did Not Present Clear and Convincing Evidence that the State Court's Decision Regarding the Photo Array was Based on an Unreasonable Determination of the Facts in Light of the Evidence Presented**

Petitioner also objects to the finding in the Magistrate's Report that Petitioner's claim that the pre-trial photo lineup was unduly suggestive is without merit.  (Doc. No. 15 at ¶ 12, Ground Three.)  Though Petitioner did not brief this issue in his supporting Memorandum of Law, the Magistrate Judge nonetheless reviewed the claim in detail.  In his third claim, Petitioner argued that the photo array used in this case was unduly suggestive because he is a light skinned black male, and the other individuals are all dark skinned black males or a light skinned Hispanic male.  (Doc. No. 15 at ¶ 12, Ground Three.)  He also argued that the photo lineup was unduly suggestive because he was the only person wearing a white t-shirt, while the other men wore dark colored shirts, turtleneck shirts, high collared coats, jackets, or sweaters.  (Id.)

Presumably because this third claim was not briefed in Petitioner's supporting Memorandum of Law, Respondents did not address it in their opposition papers.  Petitioner contends that because Respondents failed to object to this claim in their Response, the Magistrate Judge should have deemed their argument waived and thus granted his prayer for relief on this claim.  (Doc. No. 47 at 2.)  The Court disagrees.  Because Respondents opposed every claim that Petitioner briefed in his Memorandum of Law, it was reasonable for the Magistrate Judge to proceed as if Respondents also opposed Petitioner's third claim, which was not discussed in his supporting Memorandum of Law.  Similarly, the Court will not treat this claim as being unopposed by Respondents.

Petitioner objects to the Magistrate Judge's findings regarding this claim and contends that he "set forth clear and convincing evidence that the photo lineup was unduly suggestive, violated his due process rights, and resulted in irreparable misidentification."  (Id.)  In addition to providing a copy of the photo array (Doc. No. 26, Exhibit A), Petitioner alleged the following in his Petition:

> The photographic array's [sic] prominently emphasized petitioner.  He was singled out to the witnesses.  Petitioner and one other individual are the only two in the photo-lineup that resembles [sic] the varying descriptions giving [sic] by the witnesses.  Petitioner is a light skinned black male, and one other individual appears to be a light skinned Hispanic male, while all other individuals are dark skinned black males. Petitioner is the only person in the lineup wearing a white t-shirt, while the other men are wearing dark colored shirts, turtle-neck shirts, high collared coats, jackets or sweaters.  This clothing was distinguished of the suspect [sic], as described by the witnesses, where the crimes were committed at the end of summer (August 30, 1998).

(Doc. No. 15 at ¶ 12, Ground Three.)  Despite Petitioner's contentions, this averment with a copy of the photo array is not clear and convincing evidence sufficient to rebut the factual findings of the state court, which concluded that the display was not unduly suggestive.  See Burton, 770 A.2d at 782.  The Court agrees with the Magistrate Judge that this claim is without merit and should be denied.

### D.  Petitioner's Objection Regarding Claim Four is Unfounded, As He Set Forth No Grounds to Excuse the Procedural Default of this Ineffective Assistance of Counsel Claim

Petitioner next objects to the Magistrate Judge's finding that his fourth claim is procedurally defaulted.  In this claim, Petitioner alleged that trial counsel was ineffective for failing to request a pre-trial lineup for witnesses Laura Staples, Morris Shatzkin, and Dave Frieman.  (Doc. No. 25 at 25-27.)  The Magistrate Judge found this claim procedurally defaulted, as this specific claim was not previously presented to the state courts.  (Doc. No. 44 at 25.)

On direct appeal, Petitioner raised a claim of trial counsel's ineffectiveness for failing to request a live, pre-trial lineup after some witnesses allegedly could not identify Petitioner in a photo array.  Burton, 770 A.2d at 786.  Petitioner did not specifically identify which witnesses he was referring to, however, and the Superior Court presumed that he was referring to Amanda Smith, Kathleen Veillet, and Jackie Werner.[6]  Id. at 786-87.  The specific ineffective assistance of counsel claim regarding trial counsel's failure to request pre-trial lineups for Laura Staples, Morris Shatzkin, and Dave Frieman was not presented to the state court on direct or collateral appeal.  The Magistrate Judge is correct that this claim is procedurally defaulted.  Contrary to Petitioner's assertions, he has failed to set forth any evidence of a fundamental miscarriage of justice that would excuse the procedural default of this claim.  Rather, he simply states that "a fundamental miscarriage of justice committed by the Superior Court on direct appeal for their errs [sic] of raising and deciding upon the merits of this underlying claim that should have been deemed defaulted or waived on appeal."  (Doc. No. 47 at 3.)  This is not sufficient to excuse the procedural default of this claim.[7]

---

[6] The Superior Court did not explain why it focused on these three witnesses.  However, Petitioner specifically named these three witnesses in another claim in which Petitioner similarly alleged that they could not identify him in a photo array.  Burton, 770 A.2d at 779.  The Superior Court most likely understood the instant ineffective assistance of counsel claim to refer to the same three witnesses, Amanda Smith, Kathleen Veillet, and Jackie Werner, because in this claim, Petitioner similarly alleged that witnesses were unable to identify him in a photo array.  (See Doc. No. 25 at 25 ("[T]he Superior Court 'presumed' counsel was arguing the same three 'unnamed' witnesses raised in another matter.").)

[7] Both the Magistrate Judge and Respondents interpret Petitioner's papers to simultaneously argue that his appellate counsel was ineffective for failing to specifically name which witnesses Petitioner was referring to on direct appeal.  Upon review, however, Petitioner did not raise this claim in his revised Petition.  In his supporting Memorandum of Law, Petitioner states that his appellate counsel failed to specifically name the witnesses he was referring to, but he does not expand further or provide any ineffective assistance of counsel analysis as to appellate counsel.  (Doc. No. 25 at 25-27.)  In his Objections, Petitioner explains that he "did not need to raise the ineffective assistance of his appellate counsel, but did so as a cautionary matter."  (Doc. No. 47 at

**E. Petitioner's Objections Regarding Claim Five are Without Merit, As His Claim That His Arrest Was Not Supported by Probable Cause is Not Cognizable Here, and His Claim That He Was Questioned Without Being Given a <u>Miranda</u> Warning is Without Merit**

Petitioner's Objections regarding his fifth claim are without merit.  Petitioner's fifth claim was two-fold.  First, he alleged that he was arrested without probable cause.  (Doc. No. 25 at 28-31.)  Second, he alleged that he was questioned by police without being given <u>Miranda</u> warnings advising him of his rights.  (<u>Id.</u> at 31.)  The Magistrate Judge recommended that the entire claim be denied, and Petitioner's objections are discussed below.

### 1. Petitioner's Fourth Amendment Claim

In his Petition, Petitioner alleged that his arrest was not supported by probable cause because "the arresting officers had vague general descriptions of the suspect in some of the crimes, and in others, descriptions that were totally inconsistent to [P]etitioner's characteristics, or the witnesses failed to give a description at all."  (Doc. No. 25 at 29.)  In reviewing this claim, the Magistrate Judge cited to <u>Stone v. Powell</u>, in which the Supreme Court held that Fourth Amendment claims are barred on habeas review when the petitioner had a full and fair opportunity to litigate those claims in front of the state court.  428 U.S. 465 (1976).  "The Third Circuit Court of Appeals has concluded that a habeas petition [sic] had an opportunity for full and fair litigation where [1] the state court provided an opportunity for a pretrial suppression motion and [2] the Superior Court considered the claim on appeal."  <u>Carl v. Good</u>, No. 05-0353, 2007 WL 4198417, *5 (M.D. Pa. Nov. 20, 2007) (citing <u>Reinert v. Larkin</u>, 211 F. Supp. 2d 589, 597 (E.D. Pa. 2002), <u>aff'd</u>, 379 F.3d 76 (3d Cir. 2004)).

---

3.) Contrary to Petitioner's assertion, this claim was not raised in his habeas Petition or the supporting Memorandum of Law.  Therefore, the Court will not consider Petitioner's objection as it relates to his appellate counsel's supposed ineffective assistance.

Here, the state courts rejected Petitioner's Fourth Amendment claim after a suppression hearing and on direct appeal.  (Doc. No. 44 at 26.)  Thus, Petitioner had a full and fair opportunity to litigate this claim, and <u>Stone</u> bars the Court's review of the claim now.  In his Objections, Petitioner states that "he does not have sufficient information and knowledge to dispute the precedent cited by the [M]agistrate."  (Doc. No. 47 at 4.)  Rather than specifically identify the portion of the Magistrate Judge's Report to which he objects and the basis for such objections, Petitioner simply reiterates the same arguments he made in his Petition—arguments that the Magistrate Judge deemed meritless.  Because Petitioner failed to demonstrate that he did not have a full and fair opportunity to litigate this Fourth Amendment claim in state court, the Magistrate Judge is correct that this claim is barred from review here.

### 2. Petitioner's <u>Miranda</u> Claim

Similar to the claim above, Petitioner does not specifically identify the portion of the Report and Recommendation to which he objects and the basis for such objections.  Instead, Petitioner simply reiterates the same arguments found in his Petition and supporting Memorandum of Law.  In his Petition, Petitioner alleged that his constitutional rights were violated when the arresting officer questioned Petitioner before giving him <u>Miranda</u> warnings.  (Doc. No. 25 at 31.)  According to Petitioner, after he was placed under arrest, Officer John Carr walked Petitioner to the spot in the park where a bicycle and a woman's purse were found and asked Petitioner whether the items belonged to him.  (<u>Id</u>.)  Petitioner also alleges that once he was inside the police car, Officer Carr elicited more statements from him.  (<u>Id</u>.)  Petitioner alleges that the incriminating statements he gave were then used against him at trial.  (<u>Id</u>.)  According to Petitioner, it was only after he made those statements that Officer Carr gave him his <u>Miranda</u> warnings.  (<u>Id</u>.)

16

Petitioner raised this claim on direct appeal, and the Superior Court of Pennsylvania concluded that the claim was meritless.  Burton, 770 A.2d at 784.  Although Petitioner does not specifically object to the Magistrate Judge's finding on this issue, he reiterates that the Superior Court's findings were based on conflicting testimony of the two officers who were on the scene when Petitioner was arrested.  (Doc. No. 47 at 4.)  This Court has reviewed the relevant state court record, which reveals that Officer William Krzemien seemingly contradicted both himself and the testimony of the arresting officer, Officer Carr.[8]

Notwithstanding these contradictions in the record, the Superior Court's decision on PCRA appeal did not result from an unreasonable determination of the facts in light of the evidence presented at the various state proceedings.  As noted by the Magistrate Judge in his Report, the police officer who actually arrested Petitioner and read him Miranda warnings testified consistently that he read Petitioner the warnings before questioning him.  Unlike Officer Krzemien, Officer Carr was consistent in his testimony, and the trier of fact ultimately found his testimony to be credible.  Because Petitioner has failed to present clear and convincing evidence

---

[8] The trial transcript from June 16, 1999 reveals that Officer Krzemien provided conflicting testimony.  On direct examination, Officer Krzemien testified that after Petitioner was arrested by Officer Carr, Petitioner was placed in the back of the patrol car and read his Miranda rights. (N.T., June 16, 1999, 78:20-21.)  Then, on cross examination, Officer Krzemien testified that when the officers were walking back to the police car with Petitioner, Officer Carr asked Petitioner whether the bike belonged to him, and Petitioner said the bike was his.  (Id. at 138:2-139:4.)  Afterwards, Petitioner was placed in the car, and Officer Carr read his Miranda rights to him.  (Id. at 139:12-16.)  On re-direct, however, Officer Krzemien testified that when Petitioner stated that the bike was his, that statement was not in response to any question asked by either officer on the scene.  (Id. at 142:13-143:3.)  Officer Krzemien then explained that Petitioner was not questioned by Officer Carr until he was placed in the police car and given Miranda warnings.  (Id. at 143:4-18.)  On re-cross, however, Officer Krzemien repeated his earlier testimony and explained that Officer Carr asked Petitioner about the bike while they were walking back to the police car.  (Id. at 146:24-148:14.)

that he was questioned without being read his <u>Miranda</u> rights, the Magistrate Judge was correct to find this claim meritless.[9]

**F.  Petitioner's Objection Regarding Claim Six is Unfounded, As Consideration of Allegedly Contradictory Testimony of the Responding Officer Would Not Alter the Magistrate Judge's Analysis**

Next, Petitioner objects to the Magistrate Judge's treatment of his sixth claim, in which Petitioner alleged that there was insufficient evidence to convict him of attempted burglary of the McPeak residence.  (Doc. No. 31-34.)  The Magistrate Judge reviewed the Superior Court's analysis of this claim when Petitioner raised it on direct appeal.  (Doc. No. 44 at 31.)  After his review, the Magistrate Judge found this claim to be without merit.  (<u>Id.</u> at 32.)  Petitioner objects that the Magistrate Judge did not specifically consider the contradictory testimony given by Officer Steven Plum when reviewing this claim.  (Doc. No. 47 at 4.)

In reviewing this sixth claim, the Magistrate Judge considered whether the state court made a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of, clearly established federal law.  On direct appeal, the Superior Court of Pennsylvania reviewed this claim and applied a standard that is "virtually identical" to that required under federal law.  (Doc. No. 44 at 31.)  The Superior Court detailed all of the evidence which supported Petitioner's conviction of attempted burglary.  A portion of that evidence included observations and testimony by the responding police officer, Officer Plum.  In relevant part, the Superior Court noted:

> Hatboro Police Officer Steven Plum, who processed the McPeak crime scene, found a shoe impression on the seat of the chair under the window, which was <u>similar</u> to the tread on the shoes [Petitioner] wore at the time of his arrest.  Officer

---

[9] Petitioner also objects to the Report and Recommendation because the Magistrate Judge did not discuss grounds for cause and prejudice to excuse procedural default.  (Doc. No. 47 at 4.)  The Magistrate Judge did not find this claim to be procedurally defaulted, and for this reason, the Report need not discuss the cause and prejudice exception to excuse procedural default.

Plum also found mud in the impression on the seat, and [Petitioner] had grass and mud in the tread of his shoe.

Burton, 770 A.2d at 785 (internal citations omitted) (emphasis added).  These were the only facts related to Officer Plum that the Superior Court relied on when considering whether there was sufficient evidence to convict Petitioner of attempted burglary of the McPeak residence.

In his Petition, Petitioner alleged, inter alia, that Officer Plum offered contradictory testimony regarding whether the tread of Petitioner's shoe matched the imprint made on the chair found beneath the McPeaks' window.  (Doc. No. 25 at 32-33.)  According to Petitioner, Officer Plum first testified that the impression left on the lawn chair was a "definite match" to the treads on the bottom of Petitioner's shoes.  (Id. at 33.)  He contends that Officer Plum later testified that the tread was a "similar match," rather than a definite one.  (Id.)  The Court has searched the notes of testimony in the state court record and cannot locate any portion of Officer Plum's testimony where he describes the shoes' tread as a "definite match" to the imprint on the chair.[10] When evaluating the sufficiency of the evidence on direct appeal, the Superior Court relied on Officer Plum's testimony that the imprint and Petitioner's shoes were similar, rather than an exact match.  Thus, the Magistrate Judge did not need to consider Officer Plum's allegedly contradictory testimony that the prints were a definite match, as claimed by Petitioner.  Thus, on this ground, Petitioner's objection to the Report is unfounded.

---

[10] In fact, the trial court was careful to ensure that Officer Plum did not testify in this manner. Officer Plum was not testifying as an expert in the case, and the trial court did not want the jury to interpret his testimony as such.  The trial court repeatedly explained that whether the shoe imprint matched Petitioner's shoes was a fact to be determined by the jury.  (N.T., July 12, 1999, 172:20-183:21.)

**G.  Petitioner's Objections Regarding Claim Seven are Unavailing, As He Did Not Set Forth Valid Grounds to Excuse the Procedural Default of His Claim Relating to Diane Valaski, and His Claim Relating to Dr. Paul Hoyer is Without Merit**

Petitioner objects to the findings in the Report and Recommendation regarding his seventh claim, in which he alleged that trial counsel was ineffective for failing to call two additional witnesses at trial:  1) Diane Valaski, a Hatboro police dispatcher, and 2) Dr. Paul J. Hoyer, a forensic pathologist.  (Doc. No. 25 at 34-39.)  Because Petitioner did not raise the claim with respect to Diane Valaski on direct appeal or in his PCRA petition, the Magistrate Judge correctly found that this claim is procedurally defaulted.  The Magistrate Judge likewise did not find any grounds for cause and prejudice which would excuse the procedural default of this claim.  In his Objections, Petitioner simply states "that his Memorandum indeed established cause and prejudice to excuse the default regarding this witness."  (Doc. No. 47 at 5.)  Upon review of Petitioner's Memorandum of Law (Doc. No. 25), the Court finds no discussion of cause and prejudice to explain why Petitioner failed to present this claim to the state courts.  Thus, this claim, as it relates to Diane Valaski, remains procedurally defaulted and is not appropriate for federal habeas review.

The claim regarding Dr. Paul Hoyer was not procedurally defaulted, however, and the Magistrate Judge found that Petitioner failed to demonstrate that trial counsel was ineffective for failing to call Dr. Hoyer as a witness.  (Doc. No. 44 at 35-36.)  According to Petitioner, Dr. Hoyer would have been a favorable witness because he prepared a pre-trial expert report in which he stated that "[i]t is also possible that a fall against debris containing nails caused the injuries [to Petitioner's wrist]."  (Doc. No. 25 at 35; Doc. No. 26, Exhibit H.)  In that same report, however, Dr. Hoyer also found that "[i]t is possible that a dog bite produced the injuries."

(Doc. No. 26, Exhibit H.)  In his Objections to the Magistrate Judge's Report, Petitioner contends:

> No matter which conclusion is held, the fact that no one has produced evidence as to what Dr. Hoyer would have actually testified to, makes his expert opinion, as noted in his report, a favorable defense witness, in rebuttal of the Commonwealth's allegations in this case.

(Doc. No. 47 at 7.)  Petitioner has failed to present any evidence that Dr. Hoyer was available and would have testified on Petitioner's behalf.  In fact, Petitioner concedes that "no one has produced evidence as to what Dr. Hoyer would have actually testified to . . . ."  (Id.)  Petitioner accuses trial counsel and the Magistrate Judge of speculating as to what Dr. Hoyer would have testified to, yet in the same breath, Petitioner can also do no more than speculate as to how Dr. Hoyer would have testified.  As the Superior Court noted on direct appeal, Petitioner failed to provide any affidavits to support his claim that Dr. Hoyer was ready and willing to testify on his behalf at trial.  Thus, the Magistrate Judge is correct that this claim also fails.

### H.  Petitioner's Objection Regarding Claim Eight is Unavailing, As This Claim Does Not Involve a Constitutional Violation and is Not Cognizable Here

Petitioner objects to the Magistrate Judge's finding that his eighth claim is not cognizable on federal habeas review because it is based on an alleged error of state law.  In this claim, Petitioner alleged "that the lower and appellate court's [sic] violated its [sic] own procedural rule pertaining to [P]etitioner acting as 'co-counsel' [hybrid representation], when he was still represented by an attorney, and the relinquishing of that right to counsel."  (Doc. No. 25 at 39.)  The Magistrate Judge found that this claim is not cognizable on federal habeas review because Petitioner alleged errors of state, rather than constitutional, law.  (Doc. No. 44 at 37.)  Petitioner objects to this finding and further argues that the state court violated his Sixth Amendment right

to counsel by permitting Petitioner to terminate his PCRA counsel's representation and proceed pro se before conducting a hearing on the issue.  (Doc. No. 47 at 7-8.)

Despite Petitioner's contentions, it is a "long-established principle that there is no [constitutional] right to counsel in post-conviction collateral proceedings."  Moore v. DiGuglielmo, 489 F. App'x 618, 627 n.5 (3d Cir. 2012) cert. denied, 133 S. Ct. 622 (U.S. 2012) (citing Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012); Pennsylvania v. Finley, 481 U.S. 551, 555 (1987); Dunn v. Colleran, 247 F.3d 450, 467 (3d Cir. 2001)).  Because Petitioner did not allege a constitutional violation in his eighth claim, the Magistrate Judge was correct to find that this claim is not cognizable on federal habeas review.

**I.   Petitioner's Objection Regarding Claim Nine is Unfounded Because He Has Not Set Forth Valid Grounds for Cause and Prejudice to Excuse the Procedural Default of the Underlying Claim**

Petitioner objects to the finding in the Report that Petitioner's ninth claim of PCRA court error is procedurally defaulted.  (Doc. No. 47 at 8.)  In his ninth claim, Petitioner alleged:

> [T]he PCRA court erred in failing to grant post-conviction relief with respect to trial counsel's ineffective assistance for failing to object to a finding of two separate counts of robbery written on one bill of information, and to the court sentencing Petitioner on both count one (1) and count two (2) of robbery, where count one was never charged in the case, and where count two was demurred by the court.

(Doc. No. 25 at 42) (emphasis added).

The Court agrees with the Magistrate Judge that this claim is procedurally defaulted but for different reasons.  The Magistrate Judge found this claim to be procedurally defaulted because the Superior Court on PCRA appeal previously determined that the underlying claim of trial counsel's ineffectiveness had been waived since Petitioner did not raise it in his 1925(b)

statement.[11]  (Doc. No. 44 at 38-39.)  Rather than allege trial counsel's ineffectiveness in his 1925(b) statement, Petitioner argued that "PCRA counsel was ineffective for failing to adequately develop and argue" claims of trial counsel and trial court error relating to the bill of information.  (Doc. No. 28-199 at ¶ 5) (emphasis added).  The Superior Court found that the underlying claim of trial counsel's ineffectiveness had been waived, because in his 1925(b) statement, Petitioner only raised a claim regarding PCRA counsel's alleged ineffective assistance.  Burton, No. 255 EDA 2011, slip op. at 10-11 (Pa. Super. Ct. Feb. 8, 2012).  Given the Superior Court's finding of waiver, the Magistrate Judge concluded that Petitioner's instant claim is procedurally defaulted.  This would be correct if Petitioner alleged trial counsel's ineffectiveness here.  However, Petitioner's instant claim alleges that the PCRA court, rather than trial counsel, committed errors.  This specific claim of state court error has not been raised prior to the instant habeas petition.  Thus, Petitioner's ninth claim is unexhausted, and because the time has passed for Petitioner to raise this claim in state court, the claim is procedurally defaulted.

> Petitioner objects to the finding of procedural default, stating:
>
> Petitioner objects to the [M]agistrate's recommendation of claim #9, at page's [sic] 37-39, and n.8.  Petitioner avers that claims 8 and 9 are of great Constitutional dimensions, and a miscarriage of justice, where the facts established in claim #8 proves the errs made by the PCRA and Superior Court, which caused the waiver of claim #9.

(Doc. No. 47 at 8.)  In his Objections, Petitioner argues that the facts established in claim eight excuse the procedural default of claim nine.  According to Petitioner, the PCRA court prevented him from filing a supplemental concise statement to clarify and correct his original 1925(b)

---

[11] Under Pennsylvania law, a 1925(b) statement is "a concise statement of the errors complained of on appeal . . . ."  Pa. R. App. P. 1925(b).  Furthermore, "any issues not raised in a Rule 1925(b) statement will be deemed waived[.]"  Com. v. Hill, 16 A.3d 484, 494 (Pa. 2011).

statement.  (Doc. No. 25 at 40-42.)  He contends that had he been given the opportunity to file

such a supplement, he would have corrected his statement to raise the issue of trial counsel's

ineffectiveness, and thereby would have avoided the waiver of this claim.  (<u>Id.</u>)

      This argument is unavailing for two reasons.  First, Petitioner provides no explanation for

why he initially failed to raise trial counsel's ineffectiveness in his 1925(b) statement.  Instead,

he provides explanations for why he was not able to correct the statement later.  Second, as

explained above, Petitioner's instant claim is an allegation of PCRA court error rather than trial

counsel's ineffectiveness.  For these reasons, Petitioner's ninth claim is procedurally defaulted

and unreviewable here.

### J.  Petitioner's Objection Regarding Claim Ten is Not Persuasive Because the Magistrate Judge was Correct to Proceed as if Respondents Opposed this Claim

      Petitioner also objects to the Magistrate Judge's finding that Petitioner's tenth claim is

without merit.  (Doc. No. 47 at 8-9.)  Specifically, Petitioner argues that "since Respondent's

[sic] failed to object/argue this claim in their Answer, the [M]agistrate should have deemed their

argument on appeal waived from habeas review."  (<u>Id.</u> at 8.)  Similar to claim three, Petitioner

raised this claim in his Petition (Doc. No. 15) but failed to brief it further in his supporting

Memorandum of Law (Doc. No. 25).  As the Court explained in its discussion of claim three,

<u>supra</u>, Respondents opposed every claim that Petitioner briefed in his Memorandum of Law, and

thus, it was reasonable for the Magistrate Judge to proceed as if Respondents also opposed

Petitioner's tenth claim.  Similarly, the Court does not treat this claim as being unopposed by

Respondents.  Aside from this objection which deals with a procedural issue, Petitioner makes no

substantive objections and merely reiterates the arguments found in his tenth claim, which the

Magistrate Judge found to be meritless.  Without specifically identifying a portion of the

Magistrate Judge's Report to which he objects and the basis for such objections, Petitioner is not entitled to relief on claim ten.

### K. Petitioner's Objection Regarding Claim Eleven is Unavailing, As the State Court Record Reveals that the General Questions During Voir Dire were Sufficient to Rehabilitate the Two Jurors Named in this Claim

Petitioner next objects to the finding in the Report that Petitioner's eleventh claim is without merit.  (Doc. No. 47 at 9-11.)  In his eleventh claim, Petitioner alleged that trial counsel was ineffective for "failing to challenge for cause, and further question, potential jurors, who, by their voir dire answers showed that they could not be fair to Petitioner at trial[.]"  (Doc. No. 25 at 45.)  In evaluating the merits of claim eleven, the Magistrate Judge explained:

> Considering the general rehabilitative questioning of counsel and the trial judge, the individual questioning of Mr. Thurston, and defense counsel's testimony at the PCRA hearing, the state court's adjudication that defense counsel was not ineffective for failing to challenge the selection of Ms. Soldano and Mr. Thurston as jurors is not contrary to, or [does not] involve an unreasonable application of, federal law or an unreasonable determination of the facts in light of the evidence presented.

(Doc. No. 44 at 45-46.)  The Magistrate Judge found this claim to be without merit and recommended that it be denied.  (Id.)

Petitioner "objects to the [M]agistrate's assessment that the general instructions and unrelated questions were sufficient to rehabilitate [the] juror's [sic] bias in the case."  (Doc. No. 47 at 11.)  Petitioner contends that given two jurors' responses to certain voir dire questions, additional one-on-one questioning was necessary, and trial counsel was ineffective for failing to inquire further.  First, during voir dire, the trial court asked whether there was anyone there "who would tend to believe or disbelieve a police officer merely because he or she is a police officer[.]"  (N.T., July 8, 1999, 63:6-8.)  Juror number twenty-nine, Genevieve Soldano,

answered that she would believe the officer.  (Id. at 63:18-19.)  This juror was not questioned further and was picked to serve on the jury.  (Doc. No. 25 at 47.)

Second, when the trial court asked the jury panel whether they could follow the instruction not to allow sympathy, bias or prejudice to influence their decision in the case, juror number thirteen, Charles Thurston, indicated that his sympathy for a victim might interfere with his decision.  (Id. at 74:9-75:6.)  Although Charles Thurston was later questioned privately in front of the trial judge and lawyers, he was questioned about his ability to follow the judge's instructions on certain areas of the law, rather than whether his sympathy for a victim might interfere with his decision.  (Id. at 122:3-25.)  This juror was not questioned further about his response to the specific voir dire question at issue and was picked to serve on the jury.  (Doc. No. 25 at 47.)  Petitioner contends that trial counsel was ineffective for failing to question both jurors further.

The Magistrate Judge found that the trial court's general questions during voir dire and private questioning of Charles Thurston, inter alia, render this claim meritless.  (Doc. No. 44 at 45-46.)  After the two jurors gave their answers, the trial court asked general questions of the jury panel, including:  1) "Is there anyone here who believes they could not accept and apply the law as instructed by the trial Judge?"; 2) "Is there anyone here who could not follow the law?"; and 3) "[I]s there anyone who could not render a fair and impartial verdict based solely upon the evidence presented in the courtroom and the law as it pertains to this particular case as instructed by the Court?"  (N.T., July 8, 1999, 84:20-85:14.)  Neither Genevieve Soldano nor Charles Thurston responded to these questions.  (See id.)  The PCRA court found that their lack of response to the questions was sufficient, and the Superior Court of Pennsylvania affirmed on appeal.  Burton, No. 255 EDA 2011, slip op. at 12.  Furthermore, during a PCRA hearing on

26

August 19, 2010, trial counsel testified that he believed the two jurors had been rehabilitated by the trial court's general questioning.  (N.T., Aug. 19, 2010, 22:15-16, 36:24-37:5.)

The Court agrees with the Magistrate Judge that Petitioner has failed to present clear and convincing evidence to rebut the state courts' findings that the trial court's general questioning was sufficient to rehabilitate the two jurors named in claim eleven.  Moreover, Petitioner has failed to establish that trial counsel was constitutionally ineffective for failing to challenge these jurors' voir dire answers and question them further.  Thus, the Magistrate Judge is correct that Petitioner's eleventh claim is without merit.

> **L.  Petitioner's Objections Regarding Claim Twelve are to No Avail, As His Claim of Trial Counsel's Ineffective Assistance in Failing to Challenge a Juror is Without Merit, and His Subsequent Claim of PCRA Counsel's Ineffective Assistance is not a Valid Ground for Federal Habeas Relief**

Petitioner's Objections regarding his twelfth claim are without merit.  Petitioner's twelfth claim was two-fold.  First, Petitioner alleged that trial counsel was "ineffective for failing to challenge for cause, and further question, juror number 20, Joanne Frost, who [sic] voir dire answer showed that she could not be fair and impartial to Petitioner at trial."  (Doc. No. 25 at 54.)  Second, in what he styles as Ground 12(a), Petitioner claimed that "PCRA counsel was ineffective for failing to preserve/raise ground twelve (12) in the amended PCRA petition." (Doc. No. 25 at 56.)  The Magistrate Judge concluded: 1) claim twelve is without merit, and 2) the claim of PCRA counsel's ineffectiveness is not a valid ground for relief under the AEDPA. Petitioner's objections to these findings are discussed below.

> **1.  Petitioner's Claim of Ineffective Assistance of Trial Counsel**

Petitioner objects to the conclusion in the Report that his twelfth claim is without merit. In his twelfth claim, Petitioner alleged that trial counsel was "ineffective for failing to challenge for cause, and further question, juror number 20, Joanne Frost, who [sic] voir dire answer

showed that she could not be fair and impartial to Petitioner at trial." (Doc. No. 25 at 54.) Although the Magistrate Judge noted that this claim may be unexhausted because Petitioner only previously raised PCRA counsel's ineffective assistance on collateral appeal, the Magistrate Judge nonetheless reviewed this claim on the merits. (Doc. No. 44 at 46-47.) Petitioner lodged two objections with respect to the Magistrate Judge's treatment of this claim.

First, Petitioner objects to the Magistrate Judge's statement that the claim may be unexhausted. (Doc. No. 47 at 12.) This objection is moot, because despite noting that the claim may be unexhausted and therefore procedurally defaulted, the Magistrate Judge nonetheless reviewed the claim on the merits. (Doc. No. 44 at 46-47.) Thus, the Court need not consider this objection further.

Second, Petitioner objects to the Magistrate Judge's assessment that the general voir dire questions by the trial court and trial counsel's questions to the jury panel were sufficient to rehabilitate the juror at issue in claim twelve. (Doc. No. 47 at 13.) Similar to claim eleven, Petitioner alleged that a juror's answer to a voir dire question required additional one-on-one questioning, and trial counsel was ineffective for failing to inquire further. During voir dire, trial counsel asked whether anyone could not sit fairly and listen to the evidence fairly, based upon the fact that there were charges of indecent assault upon children in the case. (N.T., July 8, 1999, 93:9-12.) Juror number twenty, Joanne Frost, raised her hand in response and indicated that the charges would interfere with her ability to try the case. (Id. at 93:14-94:10.) However, when the trial court asked the jury panel whether they could 1) apply the law as instructed, 2) follow the law, and 3) render a fair and impartial verdict based solely upon the evidence presented at trial and as it pertained to the case, Joanne Frost indicated that she could do so. (See N.T., July 8, 1999, 84:20-85:14.) Joanne Frost was selected as a juror in the case. (Doc. No. 25 at 54.)

On collateral appeal, the Superior Court of Pennsylvania rejected a similar claim as meritless.  <u>Burton</u>, No. 255 EDA 2011, slip op. at 12.  The Court agrees that this claim is not unlike Petitioner's claim regarding Charles Thurston, <u>supra</u>.  Contrary to Petitioner's contentions, the record indicates that Joanne Frost was capable of rendering a fair and impartial verdict in the case.  Specifically, when the trial court asked whether anyone could not do so, Joanne Frost did not raise her hand in affirmation.  (<u>See</u> N.T., July 8, 1999, 84:20-85:14.)  The Court agrees that Petitioner has failed to present clear and convincing evidence to rebut the state courts' conclusions and demonstrate that trial counsel was constitutionally ineffective for failing to question Joanne Frost further.  Thus, the Magistrate Judge is correct that Petitioner's twelfth claim is without merit.

### 2.   Petitioner's Claim of Ineffective Assistance of PCRA Counsel

Petitioner also objects to the finding in the Report that claim 12(a) does not state a claim for relief under the AEDPA.  In this claim, Petitioner alleged that "PCRA counsel was ineffective for failing to preserve/raise ground twelve (12) in the amended PCRA petition."  (Doc. No. 25 at 56.)  The Magistrate Judge recommended that this claim be denied because "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."  28 U.S.C. § 2254(i).

Petitioner does not make a specific objection to this finding as required.  Instead, he continues to argue that <u>Martinez v. Ryan</u> permits him to establish cause and prejudice to excuse the procedural default of the underlying claim of trial counsel's ineffective assistance.  (Doc. No. 47 at 13.)  In <u>Martinez</u>, the Supreme Court held that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."  <u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1315 (2012).  This

means that PCRA counsel's ineffectiveness could constitute cause to excuse the procedural default of Petitioner's underlying claim of trial counsel's ineffectiveness. However, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Id. at 1318. As discussed above, Petitioner's underlying claim of trial counsel's alleged ineffectiveness is without merit. Thus, Petitioner is unable to overcome the procedural default of this claim of PCRA counsel's ineffectiveness under Martinez.

### M. Petitioner's Objection Regarding Claim Thirteen is Unsubstantiated, As Trial Counsel Did What Petitioner Claims He Did Not Do

Petitioner objects to the Magistrate Judge's treatment of his thirteenth claim, in which he alleged that trial counsel was ineffective for failing to move to reopen the suppression hearing to consider the admissibility of statements made by Petitioner after his arrest at the police processing center. (Doc. No. 25 at 58.) The Magistrate Judge found this claim to be unsubstantiated and recommended that it be denied. Rather than specifically identify the portion of the Magistrate Judge's Report to which he objects and the basis for such objections, Petitioner simply states that the Magistrate Judge's findings are incorrect "in light of the factual and material evidence citedargued [sic] by [P]etitioner in his Memorandum and Reply." (Doc. No. 47 at 13.)

Furthermore, this Court agrees with the Magistrate Judge that this claim is without merit. Specifically, the state court record reveals that despite Petitioner's contentions to the contrary, trial counsel did move to reopen the suppression hearing. Burton, Nos. 6091-1998, 6875-1998, slip op. at 4 (C.P. Mtgy. Dec. 30, 2010). Even Petitioner concedes that "[d]efense counsel stated on the record that he wanted to reopen the suppression." (Doc. No. 25 at 59.) (See also N.T.,

July 8, 1999, 2:21-23.)  As the Magistrate Judge found, "trial counsel is not ineffective for doing

that which [P]etitioner claimed he did not do."  (Doc. No. 44 at 49.)  Thus, this claim fails.

### N.  Petitioner Fails to Make Valid Objections Regarding Claims Fourteen, Fifteen, and Sixteen

Under Local Rule 72.1.IV(b), Petitioner must "specifically identify the portions of the

proposed findings, recommendations or report to which objection is made and the basis for such

objections . . .."  Petitioner fails to do so regarding claims fourteen, fifteen and sixteen, and

simply states:

> Petitioner objects to the [M]agistrate's recommendation of claim #'s 14, 15, and 15(a), at page's [sic] 49-50, however, he does not provide further argument with respect to these claims.

> Petitioner objects to the [M]agistrate's recommendation of claim #16, at page's [sic] 51-52, however, he does not provide further argument with respect to this claim.

(Doc. No. 47 at 14.)  Even though Local Rule 72.1.IV(b) may be relaxed when applied to pro se

litigants like Petitioner, this does not mean that the Court is required to speculate as to the nature

of the objection to the findings of the Magistrate Judge and then make a ruling on that objection.

Petitioner did not brief his fourteenth and fifteenth claims in his supporting Memorandum of

Law.  Therefore, this Court would only be speculating as to his objections to the Magistrate

Judge's findings on claims fourteen and fifteen.  Petitioner did brief his sixteenth claim in his

supporting Memorandum of Law, and the Court has considered the content of that claim as set

forth.  Notwithstanding the fact that Petitioner has failed to make a sufficient objection to the

treatment of claim sixteen, the Court has reviewed the Magistrate Judge's findings regarding this

claim and agrees with those findings.  Thus, the Court will not revisit Petitioner's arguments a

second time.

**O.  Petitioner's Objection Regarding Claim Seventeen is Unavailing Because Appellate Counsel Could Not Be Ineffective for Failing to Raise Unmeritorious Claims of Trial Counsel's Alleged Ineffective Assistance**

Petitioner objects to the Magistrate Judge's finding regarding Petitioner's seventeenth claim, in which he alleged that appellate counsel was ineffective for failing to present the above claims of trial counsel's ineffectiveness on direct appeal.  (Doc. No. 25 at 63.)  Because the state courts and the Magistrate Judge found the underlying claims of ineffective assistance of trial counsel to be meritless, the Magistrate Judge recommended that this claim be denied.  It is axiomatic that "[a]ppellate counsel cannot be found ineffective for failing to raise meritless claims on direct appeal."  (Doc. No. 47 at 53.)  Again, Petitioner fails to specifically object to the Report regarding this claim and simply restates the same arguments already considered by the Magistrate Judge.  He contends that "[a] finding that [P]etitioner's trial counsel was ineffective on the matters raised at the PCRA proceedings would automatically rule out appellate counsel's ineffectiveness for failing to raise the meritorious claim on appeal."  (Doc. No. 25 at 14.)  As discussed above, there has been no showing that trial counsel rendered ineffective assistance of counsel in this case.  Thus, appellate counsel was not ineffective for failing to raise these unmeritorious claims on direct appeal.

**V.    CONCLUSION**

For the above reasons, the Court will approve and adopt the Magistrate Judge's Report and Recommendation, and will deny the revised Petition for a Writ of Habeas Corpus.  The Court also denies Petitioner's requests for discovery and an evidentiary hearing.